IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

May 26, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

|  |  |
|---|---|
| Michael McEarchen, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  Civil Action No. 7:25-cv-000772 |
| | ) |
| Warden Giley, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner Michael McEarchen, a federal inmate proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, asserting a violation of his due process rights in connection with a prison disciplinary hearing conviction that resulted in the loss of good time. (Dkt. 1.) He specifically asserts that he was denied a Unit Discipline Committee (UDC) hearing as allegedly required by Bureau of Prison (BOP) policy and due process. (*Id.* at 2.) McEarchen also asserts that his due process rights were violated when he "was not allowed to call witnesses, review sculpatory [sic] evidence, such as video evidence, or have a staff represent[a]tive at the [Discipline Hearing Officer (DHO)] hearing." (*Id.*) McEarchen finally asserts that BOP policy was violated because he never signed a form acknowledging the UDC hearing. (*Id.* at 3.)

1

Respondent Warden Gilley moved to dismiss McEarchen's claims,[1] asserting that they fail on their substance and that McEarchen failed to exhaust administrative remedies fully prior to filing his claims as is required. (Dkts. 4, 5.) The court finds that McEarchen's petition fails to state a claim upon which relief could be granted and thus will grant Respondent's motion and dismiss this action.

## I.    Standard of Review

Under 28 U.S.C. § 2243, the court must review habeas corpus petitions and dismiss those petitions that fail to present viable claims. Additionally, a petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). "Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face . . . ." *McFarland v. Scott*, 512 U.S. 849, 856 (1994).

The court evaluates *pro se* petitions under a more lenient standard than counseled petitions, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but any petition must still state a claim. In habeas cases, "the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss." *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009). "[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state[] a plausible claim for relief" that "permit[s] the court

---

[1] Defendant also moved for summary judgment in the alternative, but the court finds granting the motion to dismiss is appropriate because the petition fails to state a claim upon which relief could be granted even when all McEarchen's facts are assumed true.

2

to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In making this evaluation, the court accepts all well-pled facts as true, but it need not assume the truth of any "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" as these are not well-pled facts. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

## II.    Analysis

Here, the complaints of McEarchen provide no basis for relief. He first complains that he was not provided a UDC hearing after he was charged with assaulting another inmate without serious injury. (Dkt. 1 at 2.) McEarchen does not contest that he did, in fact, assault the other inmate; he claims only that his rights were violated in connection with the subsequent disciplinary hearings. A UDC hearing is often the first step in the federal prison disciplinary system after preparation of an incident report documenting the alleged infraction. 28 C.F.R. § 541.7. At a UDC hearing, the hearing officer reviews the evidence and makes an initial assessment of guilt. 28 C.F.R. 541.7(e). If the UDC hearing results in a finding that the inmate violated a disciplinary rule, the inmate is then provided with a DHO hearing. McEarchen contends that he was not afforded a UDC hearing. Respondent contends that McEarchen was, in fact, given a UDC hearing, and provided documentary proof of the UDC hearing. Respondent presented an affidavit of Counselor Pendergraft attesting that he

conducted the hearing and prepared the resulting documentation of the hearing.  (Dkt. 5-1.)

Plaintiff disputes that this occurred.  (Dkt. 9-1 ¶ 12.)

The court need not resolve this dispute, however, because McEarchen was not entitled to a UDC hearing.  He was charged with assaulting another without causing serious injury, known as a 224 charge.  28 C.F.R. § 541.3(b) (Table 1).  A 224 charge is considered a "High Severity" offense.  *Id.*  BOP procedures call for the referral of "Greatest or High" severity offenses automatically for a DHO hearing.  28 C.F.R. § 541.7(a)(4).  For serious offenses, referral to a DHO hearing is "automatic[.]"  *Id.*  Because McEarchen was charged with a "High Severity" offense, the UDC was not required to be "involved except in a purely ministerial capacity, as it must automatically refer the charges to the DHO."  *Mohamed v. Streeval*, No. CV 0:19-32-HRW, 2019 WL 2163592, at *3 (E.D. Ky. May 17, 2019).

McEarchen cites *Morrisey v. Brewer*, 408 U.S. 471 (1972), as authority for his contention that he was entitled to a UDC hearing, (Dkt. 1 at 2), but *Morrisey* establishes the standards for parole revocation, not disciplinary hearings.  The standards for disciplinary hearings are established in another case in *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974), as explained below.  And these standards in *Wolff* do not apply to UDC hearings.  *Brennan v. United States*, 646 F. App'x 662, 667 (10th Cir. 2016) ("*Wolff* due process requirements do not apply to UDC hearings.").  Because McEarchen was not entitled to a UDC hearing as an initial matter, his due process rights could not have been violated even if one was not provided to him.

McEarchen next contends that his rights were violated at the DHO hearing. Specifically, he complains that during the DHO hearing, he "was not allowed to call witnesses,

4

review sculpatory [sic] evidence, such as video evidence, or have a staff represent[a]tive at the DHO hearing, in violation of *Wolff v. McDonnel*, 418 U.S. 539." (Dkt. 1 at 2.)

In prison disciplinary proceedings where an inmate faces the possible loss of good time credits, he is entitled to certain due process protections. *Wolff*, 418 U.S. 539. The Supreme Court has identified the following due process requirements for inmate disciplinary actions: (1) written notice of the charges must be given to the inmate at least twenty-four hours before his appearance in front of the prison disciplinary board; (2) prison disciplinary officers must make a written statement describing the evidence relied upon and supply reasons for any disciplinary actions; (3) the inmate must be allowed to call witnesses and present evidence at the disciplinary hearing unless allowing this would be unduly hazardous to institutional safety or correctional goals; (4) if illiterate or the hearing involves a complex matter, the inmate must be granted the opportunity to have a non-attorney representative assist him throughout the disciplinary process; and (5) the decision-maker must be impartial. *Id.* at 564–71. In these proceedings, there is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Brown v. Braxton*, 373 F.3d 501, 504–05 (4th Cir. 2004). A prison disciplinary decision comports with the requirements of due process if "some evidence" supports the decision by the prison disciplinary board. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Mahammend v. Green*, Civil Action No. JKB-23-1338, 2023 WL 8777805, at *3 (D. Md. Dec. 19, 2023). The findings will only be disturbed when unsupported by any evidence, or when arbitrary and capricious. *See Hill*, 472 U.S. at 457; *Tyler v. Hooks*, 945 F.3d 159, 170 (4th Cir. 2019).

Here, McEarchen complains that he was not allowed to call witnesses, review exculpatory evidence, such as video evidence, and to have a staff representative at the DHO hearing.[2] He has identified no exculpatory evidence in the petition or in his briefing. He was shown on video assaulting another inmate so it is unclear what exculpatory evidence would exist. (See Dkt. 5-2 at 3 (referencing CCTV footage showing McEarchen assaulting another inmate).) He explains in attachments to the petition that he requested video to establish that he had no UDC hearing. (Dkt. 1-1 at 8.) But, as explained above, this would have no impact on the DHO hearing's findings about whether McEarchen committed an assault.

The Fourth Circuit has held that, under *Wolff*, "inmates at risk of being deprived of a liberty interest, like good time credits, have a qualified right to obtain and present video surveillance evidence." *Lennear v. Wilson*, 937 F.3d 257, 262 (4th Cir. 2019). That video evidence, however, must be "of the incident giving rise to his loss of good time credits." *Id.* at 279. When an inmate has sought video evidence irrelevant to the prohibited conduct charged, courts have found no due process violation. *See, e.g., Morales Mancia v. Elam*, No. 7:19-cv-00625, 2021 WL 4164686, at *6 (W.D. Va. Sept. 13, 2021). Here, McEarchen requests a video, but is not clear on what this video will show. In his opposition briefing, McEarchen references (without attestation) that he requested video of the "incident." (Dkt. 9 at 3.) Even were the court to assume that the "incident" referred to the assault and not to the denial of the UDC hearing as McEarchen contemporaneously claimed, (*see* Dkt. 1-1 at 8), McEarchen does not contend that the video would have shown anything exculpatory or that it would not

---

[2] Defendant has stated by affidavit of the DHO that at the DHO hearing, McEarchen did not request a representative, witnesses, or video. (Dkt. 5-5 ¶ 4.) He further attested that McEarchen responded only "no comment" to the charges, declining to present any defense. (*Id.* at 3(III)(B).) McEarchen disputes this. (Dkt. 9-1 ¶ 13.) The court has, as it must on a motion to dismiss, assumed the truth of McEarchen's allegations and has not resolved any disputes.

show him assaulting another inmate. Thus, any failure to review the evidence was harmless and did not prejudice McEarchen, foreclosing a due process claim. *See Brown v. Braxton*, 373 F.3d 501, 508 (finding failure to allow witness testimony at disciplinary hearing harmless error and collecting cases); *Howard v. Copenhaver*, 2015 WL 404092, at *4 (E.D. Cal. Jan. 28, 2015) (finding no due process violation where video was unavailable at the time the DHO hearing occurred and inmate "failed to establish that the outcome of his hearing would have been different if the video surveillance had been available"). Accordingly, McEarchen has not presented a viable due process claim related to an alleged denial of video evidence.

As to McEarchen's next argument that he was not allowed to have a staff representative at the DHO hearing, *Wolff* requires a representative to assist an inmate in limited circumstances only, which are not met here. McEarchen is not illiterate and the facts of the assault were not complex, so he is not entitled to a representative at the hearing under *Wolff*.

Next, a denial of witnesses as claimed by McEarchen could present an issue theoretically under *Wolff*. Even though "a prisoner has a general right to call witnesses at a disciplinary hearing, that right is not absolute." *Allee v. Streeval*, No. 7:21-cv-00594, 2022 WL 3969945, at *6 (W.D. Va. Aug. 30, 2022). "[C]ourts should not second-guess decisions to deny a witness, as courts are 'far removed from the demands of prison administration.'" *Garner v. Clarke*, No. 7:18-cv-00560, 2021 WL 969200, at *6 (W.D. Va. Mar. 15, 2021) (quoting *Brown v. Braxton*, 373 F.3d 501, 505 (4th Cir. 2004)). As the Supreme Court explained in *Wolff*, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses . . . ." *Wolff*, 418 U.S. at 566. The Court in *Wolff* also explained that a hearing officer is not required to call a witness based on "irrelevance [or] lack

of necessity." *Id.*; *see also* 28 C.F.R. § 541.8 (allowing discretion to refuse repetitive witnesses). "[T]hese [are] significant limitations on an inmate's right to call witnesses." *Ponte v. Real*, 471 U.S. 491, 499 (1985). Thus, "a prisoner has no right to call witnesses at a disciplinary hearing if their testimony would be irrelevant, repetitive, or unnecessary." *Hoskins v. Davis*, 66 F. App'x 47, 49 (7th Cir. 2003). In *Allee*, this court found the DHO did not violate the inmate's due process right by declining to call a witness because it would have been repetitive of other evidence presented by the inmate. *Allee*, 2022 WL 3969945, at \*6.

The same holds true here. McEarchen does not make any specific allegations in his petition regarding who he wanted as witnesses or what testimony would have been elicited. Thus, he fails to state a claim for a due process violation because he fails to allege that he wanted witnesses to testify at his DHO hearing about relevant, non-repetitive, and necessary information. Moreover, to the extent he wanted to call his cellmate and Counselor Pendergraft for the purpose of establishing whether his UDC hearing occurred, as he referenced in Dkt. 1-1 at 8, such testimony would have been irrelevant to the issue of whether McEarchen committed the prohibited act of assaulting another inmate, the subject of the DHO hearing. Thus, McEarchen's allegations about being denied witnesses at the DHO hearing fails to establish a plausible claim of a due process violation.

Finally, McEarchen complains that BOP policy was violated because he did not sign a form acknowledging the UDC hearing because he contends it did not occur. The same officer that attested that he conducted the UDC hearing noted on the documents relating to the hearing that McEarchen refused to sign forms. (Dkt. 5-1 ¶ 4.) McEarchen contends he did not so refuse because there was not a hearing at which he could have refused. As with the

issues above, the court need not resolve this dispute, because even if BOP procedures were not followed, BOP policy does not set the bounds of constitutional entitlement. Any allegation that BOP failed to strictly track its regulations provides no basis for habeas relief. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995) (prison "regulations [are] not designed to confer rights on inmates[.]"). The Constitution, not agency regulations, sets procedural due process requirements. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Thus, "[a]n agency's failure to adhere to its own policies or guidelines does not constitute a violation of due process." *Julick v. Snyder-Norris*, No. 16-6652, 2017 WL 5485453, at *2 (6th Cir. 2017) (citing *Loudermill*, 470 U.S. at 541; *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004)). The alleged lack of an UDC acknowledgment form signed by McEarchen does not support a claim that McEarchen's due process rights were violated.

McEarchen's petition admitted that he had not exhausted his administrative remedies fully, but he contended that he had been prevented from doing so because of lack of responses to his grievances and because of institutional lockdowns and delays. (Dkt. 1 at 3 § V.) Defendant's motion to dismiss argues that McEarchen's sporadic attempts to grieve did not fully comply with the requirement to exhaust administrative remedies timely and properly through the highest level of appeal. (Dkt. 5 at 7–11.) Because the court's rulings above are wholly dispositive of all claims, it does not reach the issue of administrative exhaustion. Even assuming proper exhaustion or that complete exhaustion could be excused, McEarchen's claims still would be dismissed.

9

### III.    Conclusion and Order

For the reasons explained above, the court **GRANTS** Respondent's motion to dismiss, (Dkt. 4), and the Clerk may close this case.

The Clerk shall mail a copy of this Order to McEarchen.

**ENTERED** this 26th day of May, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE